PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 11-4074 and 11-4180

———

LIBERTY MUTUAL INSURANCE COMPANY,
doing business as LIBERTY MUTUAL PROPERTY
AND CASUALTY INSURANCE COMPANY
Appellant, No. 11-4180

v.

JAMES E. SWEENEY,
Appellant, No. 11-4074

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-06-cv-02227)
District Judge:  Honorable Petrese B. Tucker

———

Argued June 26, 2012
Before:  FISHER and GREENBERG, *Circuit Judges*,
and OLIVER, *District Judge*.[*]

---

[*] The Honorable Solomon Oliver, Jr., Chief Judge of
the United States District Court for the Northern District of
Ohio, sitting by designation.

(Filed: August 2, 2012)

James A. Godin
Palmer & Barr
607 Easton Road
Suite E3, Grove Summit Office Park
Willow Grove, PA  19090

Daniel J. Maher, Jr
Jenkins, Robinson, Wolf & Rubinate
6th and Chestnut Streets
500 Public Ledger Building
Philadelphia, PA  19106

Richard J. Mennies (Argued)
Mayers, Mennies & Sherr
3031 Walton Road
Building A, Suite 330
P.O. Box 1547
Blue Bell, PA  19422
        *Counsel for Liberty Mutual Ins. Co. d/b/a*
        *Liberty Mutual Property & Casualty Ins. Co.*

Stephen David
Edward H. Rubenstone (Argued)
Lamm Rubenstone
3600 Horizon Boulevard, Suite 150
Trevose, PA  19053
        *Counsel for James E. Sweeney*

_____

2

OPINION OF THE COURT

———

OLIVER, *District Judge*.

## I.

In this insurance dispute, Defendant-Appellant James Sweeney ("Mr. Sweeney") appeals from the Order of the District Court granting summary judgment in favor of Plaintiff-Appellee/Cross-Appellant Liberty Mutual Insurance Company ("Liberty Mutual"). Liberty Mutual cross-appeals from the portion of the District Court's Order rejecting two alternative and independent bases for denying Mr. Sweeney coverage under his insurance policy. For the following reasons, we will reverse the judgment of the District Court, and remand with instructions for the District Court to enter judgment in favor of Mr. Sweeney. Liberty Mutual's cross-appeal is dismissed.

## II.

At all relevant times, Mr. Sweeney owned and operated a transmission repair shop in Chalfont, Pennsylvania. During the course of managing his repair shop, Mr. Sweeney developed an informal business relationship with George Tradewell ("Mr. Tradewell"), who owned a car rental business in nearby Montgomeryville, Pennsylvania. As part of this business relationship, Mr. Sweeney would refer his customers to Mr. Tradewell if they needed to rent a vehicle while their own vehicles were in Mr. Sweeney's shop for repair. In his deposition, Mr. Tradewell estimated that he would rent vehicles to one or two of Mr. Sweeney's customers per month.

The manner in which the rental cars would be delivered to Mr. Sweeney's customers varied. On some occasions, Mr. Sweeney would simply refer his customers to Mr. Tradewell's shop or drive them to Mr. Tradewell's business. If any of Mr. Tradewell's employees were available, Mr. Tradewell would have them drop off a rental car at Mr. Sweeney's shop. As another option, Mr. Sweeney would pick up a rental car from Mr. Tradewell's business and deliver it to the customer either that day or the following morning. On those instances where Mr. Sweeney came into possession of a rental car for the purpose of delivering it to one of his customers, Mr. Sweeney would occasionally use the car to run personal errands. This was encouraged by Mr. Tradewell, who asked Mr. Sweeney to use those occasions as opportunities to make sure the cars were running properly.

On February 4, 2004, at 8:17 p.m., Mr. Sweeney was injured in a car accident while driving a 2000 Ford Taurus owned by Mr. Tradewell's business. Mr. Tradewell had no firsthand knowledge of how and when Mr. Sweeney came into possession of the car, and was out of the state on the day of the accident. At his deposition, Mr. Sweeney also could not recall when he came into possession of the vehicle, but testified that he intended to deliver it to a customer the following morning. That evening, Mr. Sweeney's wife asked him to go to a local grocery store to pick up taco shells for their dinner. Mr. Sweeney opted to use Mr. Tradewell's 2000 Ford Taurus to run this errand because it was the outermost car in his driveway. He was involved in the accident on his way back from the grocery store. Following the accident, Mr. Sweeney filed an application for underinsured motorist

4

("UIM") benefits[1] pursuant to his insurance policy with Liberty Mutual, which claim Liberty Mutual denied, relying upon three policy provisions:

1. The "auto business" exclusion: "We will not pay for bodily injury sustained while using a non-owned motor vehicle in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking motor vehicles." (App. 64a.)

2. The "intended use" provision: "You and a resident relative are insured while using a non-owned car. The owner must give permission to use it. It must be used in a way intended by the owner." (App. 53a.)

3. The "regular use" provision: "We will not pay for bodily injury sustained while using or occupying a motor vehicle or trailer not insured under this Part, that is furnished or made available for regular use by you or a household resident." (App. 63a.)

---

[1] As this Court has explained, "UIM insurance is designed to protect an insured from a negligent driver of another vehicle who causes injury to the insured, but through no fault of the insured, lacks adequate insurance coverage to compensate the insured for his or her injuries." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 209 (3d Cir. 2001).

5

On May 25, 2006, Liberty Mutual filed an action for declaratory relief in the United States District Court for the Eastern District of Pennsylvania. Liberty Mutual sought a declaration providing that Mr. Sweeney was not entitled to coverage on the basis of the three provisions cited above. The District Court granted summary judgment in favor of Mr. Sweeney on the basis that the second exclusion did not bar coverage, and denied Liberty Mutual's cross-motion for summary judgment. Liberty Mutual appealed, and on March 23, 2009, this Court summarily remanded the case to the District Court as a result of the District Court's failure to address all three policy exclusions relied upon by Liberty Mutual. Liberty Mut. Ins. Co. v. Sweeney, 317 F. App'x 185 (3d Cir. 2009). This Court explained that the District Court's ruling was improper because "Liberty Mutual need only prove that one of its asserted policy exclusions applies." Id.

On remand, the District Court granted Liberty Mutual's motion for summary judgment and denied Mr. Sweeney's motion for summary judgment, finding that while the "intended use" and "regular use" provisions did not bar coverage, Liberty Mutual could nevertheless deny coverage on the basis of the "auto business" provision. Mr. Sweeney timely appealed the Order of the District Court. Liberty Mutual filed a cross-appeal challenging the District Court's determinations concerning the "intended use" and "regular use" provisions.

III.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and apply the same standard the District Court applied. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir.

6

2011). We review the facts in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. See Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). We will affirm if our review shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV.

On appeal, Mr. Sweeney argues that the District Court erred in holding that Liberty Mutual could deny coverage on the basis of the policy's "auto business" exception. Mr. Sweeney argues that this provision does not bar coverage because, at the time of the accident, he was running a personal errand and was not engaged in any type of "auto business" as defined by the policy. As an initial matter, Mr. Sweeney notes that the District Court considered the wrong policy language in interpreting the "auto business" exception. The language considered by the District Court provided, in pertinent part, that Liberty Mutual "will not pay for bodily injury caused by anyone using a non-owned motor vehicle in any kind of auto business." (App. 54a.) However, prior to Mr. Sweeney's 2004 accident, certain provisions in his insurance policy had been amended, including the "auto business" provision. The amended provision provided that Liberty Mutual "will not pay for bodily injury *sustained while using* a non-owned motor vehicle in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking motor vehicles." (App. 64a (emphasis added).)

Interpreting the original policy language, the District Court held that "the relevant issue is not one of timing as

7

Defendant contends, but whether the language 'in any kind of auto business' pertains to Defendant's use of the 'non-owned' vehicle." (App. 11a.) The District Court further emphasized that "but for Defendant's desire to provide his customers with an alternative means of transportation while he serviced the customers' transmissions, Defendant would never have come into possession of the 'non owned' vehicle. The specific reason for Defendant's use at the time of the accident is not enough to change the general purpose for which he possessed the vehicle." (App. 12a.) Liberty Mutual concedes that the District Court did not consider the correct language, but argues that the result would nevertheless be the same under the amended policy language.[2] We disagree.

In this case, it is undisputed that, at the time of the accident, Mr. Sweeney was engaged in a personal errand, i.e., he was returning home from a trip to the grocery store, and that he used a non-owned vehicle which was to be delivered to a customer the following morning. The dispositive

---

[2] The record reveals that Sweeney did not file a motion for reconsideration, which would have been appropriate in light of the District Court's failure to evaluate the correct provision. This Court has explained that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Nevertheless, we possess the authority to issue the relief requested by Sweeney. On an appeal from a grant of summary judgment, "we are free to enter an order directing the district court to enter summary judgment in favor of the appellant," where, as here, the appeal raises only issues of law. Helen L. v. DiDario, 46 F.3d 325, 339 (3d Cir. 1995).

question before the court is whether his injuries were "sustained while using a non-owned motor vehicle in any kind of auto business," notwithstanding the fact that at the time of the accident he was using Mr. Tradewell's vehicle for a personal endeavor.

Under Pennsylvania law, the interpretation of a contract of insurance is a matter of law for determination by the court. Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). The court's "primary goal in interpreting a policy . . . is to ascertain the parties' intentions as manifested by the policy's terms." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). The court construes "[w]ords of common usage . . . according to their natural, plain, and ordinary sense." Id. To this end, the court "may consult the dictionary definition of a word to determine its ordinary usage." Id. Contractual terms are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). If the court finds that a particular term is ambiguous, "the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Standard Venetian Blind Co., 469 A.2d at 566 (citation omitted). If "however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Id. We find that the "auto business" exclusion at issue in this case is unambiguous, and does not operate to bar coverage in this case.

While the District Court held that "the relevant issue is not one of timing," (App. 16a), this is incorrect when one considers the actual policy language. The relevant "auto

9

business" exception bars coverage for injuries "sustained while using a non-owned motor vehicle in any kind of auto business." The operative clause is "sustained while using," which unambiguously imposes a temporal restriction. The word "while" is defined as "the time during which an action takes place or a condition exists." Webster's Third New International Dictionary, Unabridged (Merriam-Webster 2002), http://unabridged.merriam-webster.com (last accessed May 30, 2012). The exclusion is triggered in "the time during which" the insured is "using a non-owned motor vehicle in any kind of auto business." At the time of the accident, Mr. Sweeney was using Mr. Tradewell's car for the purpose of running a personal errand, and not using it "in any kind of auto business." The fact that the car was a rental vehicle which was to be eventually delivered to a customer is not dispositive; pursuant to the plain language of the policy, we look to the conduct Mr. Sweeney was engaged in at the time of the accident.

Although the Pennsylvania Supreme Court has yet to analyze a similar policy provision, various panels of the Superior Court have interpreted policies containing various "auto business" exceptions and have similarly examined the timing and circumstances of the accident. See, e.g., McKuhn v. Aetna Cas. & Sur. Co., 664 A.2d 175, 177 (Pa. Super. Ct. 1995) (holding exclusion applied where, "at time of the accident," driver "was engaged in the business of parking vehicles" and accident "occurred during McKuhn's working day during his employment as a parking attendant"); Pecorara v. Erie Ins. Exch., 596 A.2d 237, 239-40 (Pa. Super. Ct. 1991) (holding exclusionary clause did not apply where "at the time of the accident" truck was being used "to haul shale to improve a parking lot" which was "not the normal use of

10

an automobile . . . while engaged in the automobile [repair] business"); <u>Zizza v. Mitchell</u>, 418 A.2d 761, 762 (Pa. Super. Ct. 1980) (holding exclusion applied where at the time of the accident, employee of auto repair business was driving customer's car to his shop for repairs, "in furtherance of the interests of [employer]").[3]

This line of cases teaches us that "we are to examine the conduct at issue to see if it is contemplated by the exclusion." <u>McKuhn</u>, 664 A.2d at 177. That is because such "automobile business" exclusions are typically intended to "encompass a specific risk," <u>Percorara</u>, 596 A.2d at 239, namely the risks associated with the operation of the automobile businesses. <u>See also</u> <u>McKuhn</u>, 664 A.2d at 177 ("We must ask whether the exclusion was meant to protect against the risk occasioned by the conduct."). At argument, counsel for Liberty Mutual questioned whether a focus on the timing and circumstances of the accident provides an appropriate limiting principle. However, we need not define the outer limits of the auto business exception at issue here because the facts of this case are not at the margins. Mr. Sweeney's accident did not take place as he was making a brief rest stop on his way to deliver the car to a customer; Mr. Sweeney was returning from a trip to the grocery store in a car that he intended to deliver to a customer the next day. Because Mr. Sweeney's injuries were sustained while he was using the non-owned vehicle to run a personal errand after

------

[3] In the absence of guidance from Pennsylvania's Supreme Court, we may look to intermediate appellate court decisions tending to show how the Supreme Court would decide the issue. <u>See</u> <u>Norfolk S. Ry. Co. v. Basell USA Inc.</u>, 512 F.3d 86, 92 (3d Cir. 2008).

11

work hours, and not while he was engaged "in any kind of auto business," we reverse the decision of the District Court finding that coverage was precluded by the "auto business" exception.

## V.

On cross-appeal, Liberty Mutual challenges the District Court's determination regarding the "intended use" provision of the insurance policy.[4] The District Court originally addressed the "intended use" provision in its January 4, 2008 Order granting judgment in favor of Mr. Sweeney, which this Court summarily reversed so that the District Court could address all three policy provisions. The District Court incorporated this analysis into its October 7, 2011 Order granting Liberty Mutual's summary judgment motion. (App. 9a, n. 1.) The District Court held that "Mr. Tradewell's understanding and consent to the occasional use of his cars to run personal errands" was clear from the record, (App. 16a, n.1), and thus Liberty Mutual had not demonstrated a breach of the "intended use" provision, which provides that "[Mr. Sweeney] and a resident relative are insured while using a non-owned car. The owner must give permission to use it. It must be used in a way intended by the owner." Before this Court, Liberty Mutual argues that "[t]he

_____

[4] We note that in this case, a cross-appeal was not necessary to preserve Liberty Mutual's arguments concerning the remaining two policy provisions, even though the District Court rejected Liberty Mutual's two alternative grounds for denying Sweeney UIM benefits. In raising these points on appeal, Liberty Mutual has "asserted no more than a defense of the judgment in its favor." Cospito v. Heckler, 742 F.2d 72, 78 n.8 (3d Cir. 1984).

policy language is clear: the non-owned vehicle must be used in a way that the owner both permitted and intended. Otherwise, the policy language would be redundant." (Appellee/Cross-Appellant's br. at 24.)    Liberty Mutual argues that this provision was breached, citing to the following deposition testimony of Mr. Tradewell:

> Q. Now, can we agree that in your statement you've indicated that you were aware that Mr. Sweeney would use your vehicles for personal errands?

> A. It was not intended, although not forbidden.

(App. 252a.)    On the basis of Mr. Tradewell's conclusory statement that such use "was not intended," Liberty Mutual argues that "Mr. Tradewell's permission to use the vehicle on a personal errand . . . is not enough to escape this policy exclusion when Mr. Tradewell's own testimony is that Mr. Sweeney's    personal    errand    'was    not    intended.'" (Appellee/Cross-Appellant's br. at 24.)

Liberty Mutual, however, selectively quotes Mr. Tradewell's deposition testimony, omitting testimony which unequivocally shows that the vehicle was being used in a manner contemplated by the owner:

> Q. How did you first become aware that Mr. Sweeney would run personal errands in your vehicles?

> A. I asked him to.

> . . .

13

Q. When you say personal errands, you mean personal on behalf of you, or personal on behalf — I guess I looked at it differently. You mean personal on behalf of you, or do you mean personal on behalf of him?

A. Him.

. . .

A. Rather than use his personal car for running an errand, I would prefer him use mine to get the road experience and give me an opinion.

. . .

Q. I'm not asking you whether it was allowed in retrospect. I'm asking you whether or not before this accident you knew that he was taking your vehicles and going to the super market with them?

A. Yes.

(App. 253a-256a.)

The operative term in this provision is unambiguous. The word "intended" is defined as "to have in mind." Webster's Third New International Dictionary, Unabridged (Merriam-Webster 2002), http://unabridged.merriam-webster.com (accessed May 30, 2012). The deposition testimony in this case reflects that Mr. Tradewell clearly had in mind that Mr. Sweeney might be using his vehicles to run personal errands on those occasions where he came into possession of them. In fact, he encouraged Mr. Sweeney to

14

do so as a means of getting Mr. Sweeney's opinion regarding the condition of his cars. Liberty Mutual has put forth no evidence showing that Mr. Tradewell did not have in mind that Mr. Sweeney would be using his vehicles to run personal errands, and thus the District Court properly rejected Liberty Mutual's contention that this provision was breached.

## VI.

Finally, we address Liberty Mutual's argument concerning the policy's "regular use" exclusion, which provides that "[Liberty Mutual] will not pay for bodily injury sustained while using or occupying a motor vehicle or trailer not insured under this Part, that is furnished or made available for regular use by you or a household resident." After noting that "[g]enerally, courts have found the term 'regular use' unambiguous in exclusion of automobile liability coverage," (App. 13a), the District Court held that "it is obvious that [Mr. Sweeney's] use of the 'non-owned' vehicle was not habitual but merely incidental to a service offered as a convenience to his customers." (App. 14a.) On cross-appeal, Liberty Mutual argues that "the test for 'regular [use]' does not consider how often the fleet of vehicles is actually used, but rather whether the group of vehicles was regularly available for use." (Appellee/Cross-Appellant's br. at 30.) Liberty Mutual further argues that "[g]iven the nature of the relationship between their two businesses, [Mr. Tradewell] made vehicles available for Mr. Sweeney's regular use in connection with his transmission repair business." (Id. at 31.) We disagree, and hold that the "regular use" exclusion does not operate to bar coverage for Mr. Sweeney's injuries.

As both Mr. Sweeney and Liberty Mutual note, courts have routinely found "regular use" exclusions to be

15

unambiguous.  See, e.g., Brink v. Erie Ins. Grp., 940 A.2d 528, 533 (Pa. Super. Ct. 2008) (holding exclusion is not ambiguous).  Viewed in isolation, "'[r]egular use' means 'habitual use' as opposed to occasional or incidental use." Crum & Forster Pers. Ins. Co. v. Travelers Corp., 631 A.2d 671, 673 (Pa. Super. Ct. 1993) (citation omitted).  However, the "vehicle must be 'furnished or available' for regular use[;] . . . [t]his implies an understanding with the owner of the vehicle that the family member of the named insured could use the automobile of the other person at such times as he or she desired, if available."  Id. (citations omitted). Significantly, the Pennsylvania Superior Court has described the purpose of such provisions as preventing "the situation in which [the insured] may have two vehicles which they can use interchangeably while insuring only one of them."  Id.; see also Johnson v. Braunsberg, 51 Pa. D. & C.2d 659, 661 (Pa. Com. Pl. 1970) ("Regular use" exclusion "represents an attempt on the part of the insurance company to strike a balance between the desire of the insured to be covered, even though not always using his own car, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated.").  While the question whether a vehicle is excluded from coverage under a "regular use" provision is usually a question for the jury, the court can decide the issue of coverage as a matter of law where the relevant facts are not in dispute.  Crum & Forster Pers. Ins. Co., 631 A.2d at 673.

In this case, the record does not reveal any indicia of habitual use or any understanding between Mr. Sweeney and Mr. Tradewell that Mr. Sweeney had general access to Mr. Tradewell's fleet of vehicles.  As the District Court noted, Mr. Tradewell's vehicles were available to Mr. Sweeney in

16

limited circumstances only, i.e., when one of Mr. Sweeney's customers needed a replacement vehicle while his or her vehicle was being repaired in Mr. Sweeney's shop. And even when one of Mr. Sweeney's customers needed a rental vehicle, Mr. Sweeney did not as a matter of course pick up a vehicle from Mr. Tradewell's business and deliver it to the customer. That was only one of several ways in which a customer could come into possession of one of Mr. Tradewell's rental vehicles. Under these circumstances, Mr. Sweeney was not allowed "unfettered access" to Mr. Tradewell's cars, as the District Court put it. To the contrary, it was limited, conditional, and infrequent, such that an expectation of an additional premium for Mr. Tradewell's vehicles would be unreasonable. See Burstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 208-09 (Pa. 2002) (discussing policy concerns and "practical realities of insurance" animating "regular use" exclusions). None of the cases cited by Liberty Mutual support its position; rather, they support our conclusion. See, e.g., Prudential Prop. & Cas. Ins. Co. v. Hinson, 277 F. Supp. 2d 468, 475 (E.D. Pa. 2003) (holding "regular use" provision applied where driver "used either one of the two Oley Township police vehicles for twenty to forty hours a month, in the performance of his duties, over the course of approximately six years" and such vehicles "were readily obtainable by him whenever his full-time schedule permitted"); Crum & Forster Pers. Ins., 631 A.2d at 674 (holding vehicle was furnished and available for "regular use" to family member of the insured where he admitted to using subject vehicle "on an average of five times per week for and during the entire four years preceding the accident"); see also Nationwide Mut. Ins. Co. v. Shoemaker, 965 F. Supp. 700, 706 (E.D. Pa. 1997), aff'd,149 F.3d 1165 (3d Cir. 1998) (noting that important indicia of regular use

include "(1) blanket permission to use the car rather than having to request permission each time and (2) an available set of keys"). Because Liberty Mutual has not put forth any evidence suggesting that Mr. Tradewell's rental cars were "furnished or made available for regular use" by Mr. Sweeney, we will affirm the District Court.

## VII.

For the foregoing reasons, we will REVERSE the judgment of the District Court, dismiss Liberty Mutual's cross-appeal, and remand this case to the District Court with instructions to enter judgment in favor of Mr. Sweeney.