NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2129
_____

ERCOLE MIRARCHI
doing business as
ORIGINAL GEORGE'S PIZZA
PARLOR

Ercole Mirarchi,
                                    Appellant

v.

SENECA SPECIALTY INSURANCE COMPANY
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-03617)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
April 8, 2014

Before:  AMBRO, JORDAN, and ROTH, Circuit Judges

(Opinion filed: April 29, 2014)

_____

OPINION
_____

AMBRO, Circuit Judge

Ercole Mirarchi brought an action against Seneca Specialty Insurance Company alleging bad faith and breach of contract in the handling of his claim following a fire that destroyed his property. The District Court granted summary judgment in favor of Seneca. Mirarchi now appeals that ruling as well as various discovery rulings. We affirm.[1]

## I.    Background

In 2007 Mirarchi purchased property located in Philadelphia, Pennsylvania. The location included space for his restaurant, Original George's Pizza Parlor. Mirarchi purchased an insurance policy for the property through Seneca. The policy's coverage limit was $600,000 and it directed that valuation on any claim be done according to the actual cash value ("ACV") of the property. The policy defined ACV as "the amount it would cost to repair or replace [the property], at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence." App. at 98. Under the policy, Seneca would not pay on any claim until it received a formal proof of loss from Mirarchi. If a disagreement arose as to the value of the property or amount of loss, either party could seek an appraisal.

In May 2008, a fire damaged the property, including the restaurant. Mirarchi promptly notified Seneca and a claim was opened. Seneca (which never contested that the fire was a covered event under the policy) and Mirarchi each retained experts to inspect the damage and estimate the cost of repairs. Seneca's expert estimated the ACV

---

[1] The District Court had subject matter under 28 U.S.C. § 1332. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

to be $331,777.42, whereas Mirarchi's expert believed the ACV to be $692,160. Despite the differing estimates, Seneca paid the first $100,000 on the claim after Mirarchi submitted a partial proof of loss on August 4, 2008. In October 2008, Mirarchi submitted a proof of loss based on his expert's full assessment of the ACV. Within a month, Seneca paid the full undisputed portion of the claim (that is, the amount of its own estimate of ACV).

As to the disputed amount, the experts for the parties continued amicable discussions to resolve the discrepancy. Those discussions ended, however, when Mirarchi told his expert that he would not accept less than $500,000 for the loss. Mirarchi later pointed out that Seneca never offered more than its original ACV estimate of $331,777.42. At any rate, the parties mutually agreed to enter the appraisal process, and each side hired an independent appraiser. Seneca's appraiser estimated the ACV at $449,550, more than $100,000 higher than the insurer's original estimate. The dispute was submitted to an umpire, and on October 20, 2009, the umpire concluded that the ACV was $618,338.07. Seneca therefore paid the balance remaining on the $600,000 policy limit.

Mirarchi sued, alleging that Seneca delayed payment on his claim in bad faith. After the parties cross-moved for summary judgment, the District Court partially granted Mirarchi's request for additional discovery, and the parties supplemented their summary judgment briefs accordingly. Shortly before oral argument on the dispositive motions, Mirarchi's counsel moved to withdraw. After new counsel entered an appearance, the District Court again allowed Mirarchi to supplement his summary judgment briefing.

3

Following this extensive briefing and oral argument on the motions, the Court granted Seneca's motion for summary judgment.

## II. Standard of Review

"We exercise plenary review over a District Court's grant of summary judgment . . . ." *Zavala v. Wal Mart Stores Inc*., 691 F.3d 527, 545 (3d Cir. 2012) (internal quotation marks and citation omitted). "We will affirm if our review shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). When determining whether there is any genuine issue of material fact, the record must be viewed in the light most favorable to the non-moving party. *HIP Heightened Independence & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 351 (3d Cir. 2012).

We review a district court's rulings regarding the scope and conduct of discovery for abuse of discretion. *Petrucelli v. Bohringer & Ratzinger*, *GMBH,* 46 F.3d 1298, 1310 (3d Cir. 1995).

## III. Discussion

On appeal, Mirarchi challenges the District Court's award of summary judgment to Seneca as well as its rulings as to the discoverability and admissibility of certain evidence. Because the discovery rulings affected the evidence considered at summary judgment, we address them first.

4

A.	Discovery Rulings

Mirarchi first challenges the District Court's ruling that information as to Seneca's loss reserve estimates was irrelevant to the claims and thus not discoverable. The evidence is important to Mirarchi because Seneca set its loss reserves for Mirarchi's claim at the $600,000 policy limit. According to Mirarchi, this shows that Seneca knew his claim was worth more than what it offered to pay and demonstrates bad faith.

The District Court denied Mirarchi discovery of evidence related to the loss reserves and did not consider the loss reserve estimates (to the extent they were revealed in discovery) at summary judgment. The Court explained that a loss reserve is "the insurer's own estimate of the amount which the insurer *could* be required to pay on a given claim." App. at 12 (quoting 17A Couch on Ins. § 251:29) (emphasis added). Although the Court recognized that such information is sometimes relevant in bad faith cases, it concluded that in this case the loss reserve figures did not represent "an evaluation of coverage based upon a thorough factual and legal consideration" and hence were irrelevant and not discoverable. App. at 14 (quoting *Ind. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986)) (internal quotation marks omitted).

Mirarchi repeatedly references the evidence in his brief, but fails to show that the loss reserve figures were related to Seneca's considered estimate of the ACV such that they would be relevant to his bad faith claim. We see no error in the District Court's legal analysis of the relevance of loss reserve estimates generally in bad faith cases, and

5

the Court did not abuse its discretion in excluding the evidence in this case based on its lack of relevance to Mirarchi's bad faith claim.[2]

Mirarchi's argument that the District Court erred in refusing to extend discovery, compel additional discovery responses, and reconsider earlier discovery rulings after he retained new counsel is also rejected. "District Court[s] ha[ve] considerable discretion in matters regarding . . . case management, and a party challenging the [D]istrict [C]ourt's conduct of discovery procedures bears a 'heavy burden.'" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012) (citation omitted). Mirarchi does not explain why he filed the motion to compel and extend discovery more than three months after the discovery deadline, and the District Court noted that, even if timely, the motion sought documents that were already produced, may not exist, and/or were in the possession of third parties. App. at 7 n.1. Moreover, the Court allowed Mirarchi to supplement his summary judgment briefing at least twice. *Id.* at 22. In this context, it did not abuse its discretion when it denied Mirarchi's belated motion for additional discovery.

B.      Summary Judgment

Mirarchi also challenges the grant of summary judgment in Seneca's favor on his bad faith and breach of contract claims. In Pennsylvania, "bad faith" in insurance cases is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. 1994); *see also* 42 Pa. C.S.

---

[2] Mirarchi also contends that the District Court improperly denied him discovery of communications between Seneca and its reinsurer about the value of Mirarchi's claim. We affirm for the same reasons we affirm the Court's rulings as to the loss reserve evidence—Seneca's communications with the reinsurer are not evidence of its considered evaluation of the value of Mirarchi's claim.

§ 8371 (providing a remedy for bad faith on the part of insurers). Bad faith must be demonstrated by clear and convincing evidence, a burden that applies even on summary judgment. *Post v. St. Paul Travelers Ins. Co.,* 691 F.3d 500, 523 (3d Cir. 2012). Because Seneca ultimately paid the full policy limit, Mirarchi's bad faith claim was based on the insurer's delay in paying the claim. For such a claim, Mirarchi had to show that (1) the delay was attributable to Seneca, (2) it had no reasonable basis for causing the delay, and (3) it knew or recklessly disregarded the lack of a reasonable basis for the delay. *See Thomer v. Allstate Ins. Co.,* 790 F. Supp. 2d 360, 369-70 (E.D. Pa. 2011).

On appeal, Mirarchi relies principally on Seneca's own independent appraiser's estimate that exceeded Seneca's initial estimate and offer. He argues that Seneca acted in bad faith by standing by its adjuster's initial estimate of ACV pending resolution by the umpire, failing to make an additional partial payment, and failing to make a higher settlement offer.

As the District Court noted and as Mirarchi concedes, Seneca had no duty to advance partial payments to Mirarchi, particularly because the claim was disputed. *See Zappile v. Amex Assurance Co.*, 928 A.2d 251, 256 (Pa. Super. Ct. 2007). We decline Mirarchi's invitation to create new law in this area. The undisputed evidence showed that Seneca relied on a genuine and considered estimate of ACV by its first expert.[3] That

---

[3] The District Court also rejected Mirarchi's related argument that a purported mathematical relationship between Seneca's initial claim estimate, the purchase price of the property, and the balance on Mirarchi's mortgage showed a conspiracy between the insurer and its hired experts. On appeal, Mirarchi devotes 15 pages of his brief to calculations that similarly purport to show Seneca's first offer was not based on a true estimate of repair costs. These calculations lack sufficient explanation to make them

subsequent estimates assigned a higher value to the claim is not "clear and convincing" evidence that Seneca acted in bad faith either in arriving at its initial estimate or by standing by that estimate until the appraisal process concluded. *See, e.g., Albert v. Nationwide Mut. Fire Ins. Co.*, No. 3CV991953, 2001 WL 34035315, at *11-12 (M.D. Pa. May 22, 2001). That is, after all, what the appraisal process is for—settling disputes about the value of a claim. We agree with the District Court that Mirarchi failed to show by clear and convincing evidence that Seneca acted unreasonably in the manner it paid the claim; no reasonable juror could conclude otherwise. Mirarchi's breach-of-contract claim, based on a breach of the duty of good faith, fails for the same reasons as his bad faith claim. Summary judgment was thus appropriately awarded to Seneca.

For the foregoing reasons, we affirm.

---

persuasive. We thus reject Mirarchi's argument that they constitute evidence that this offer by Seneca was made in bad faith.