**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1671
_____

BANKUNITED, N.A.

v.

WILLIAM SCISM; KAREN SCISM; GC OF VINELAND, LLC.

v.

GOLDEN CORRAL CORPORATION; GOLDEN CORRAL FRANCHISING
SYSTEMS, INC.

(D.C. No. 2:18-cv-12879)


GOLDEN CORRAL FRANCHISING SYSTEMS, INC.

v.

WILLIAM SCISM; KAREN SCISM; GC OF VINELAND, LLC.

(D.C. No. 2:20-cv-02994)

GC of Vineland; William Scism; and Karen Scism,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court Nos. 2:18-cv-12879 and 2:20-cv-02994
District Judges:  Honorable Evelyn Padin and Honorable Cathy L. Waldor
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on December 10, 2024
_____

Before: BIBAS, CHUNG, and ROTH, Circuit Judges

(Filed: February 26, 2025)

_____

OPINION[1]

_____

CHUNG, Circuit Judge.

William Scism, Karen Scism, and their business entity, GC of Vineland, LLC ("GCV"), challenge the District Court's partial grant of Golden Corral Corporation and Golden Corral Franchising Systems, Inc.'s (collectively, "Golden Corral") motion to dismiss, denial of leave to file a motion pursuant to Rule 54(b), and lost-profits award at summary judgment. For the reasons presented below, we will affirm.

I.   BACKGROUND[2]

Golden Corral entered into a Franchise Agreement with the Scisms on May 24, 2007, under which the Scisms would operate a Golden Corral restaurant in Vineland, New Jersey. As part of the agreement, the Scisms paid Golden Corral a $50,000 initial franchise fee. On April 20, 2011, Golden Corral, the Scisms, and GCV entered into an Assignment of Franchise Agreement ("Assignment Agreement"). Under the Assignment Agreement, the Scisms assigned their rights under the Franchise Agreement to GCV with the consent of Golden Corral. As a condition of Golden Corral's consent, the Scisms

_____

[1]   This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[2]   Because we write for the parties, we recite only facts pertinent to our decision.

2

released "any and all claims" against Golden Corral "arising out of or related to" the Franchise Agreement "at any time prior to and including the date of [] Assignment." Appx. 110.

The Scisms ran the restaurant from October 19, 2011 to May 22, 2018, although the Franchise Agreement specified it would be run for 15 years. After being sued for defaulting on their loan, the Scism parties (i.e., the Scisms and GCV) filed a third-party suit against Golden Corral in the District of New Jersey on December 12, 2018. The Scism parties alleged that Golden Corral did not disclose known deficiencies of the restaurant site to the Scism parties before it entered into the Franchise Agreement. Golden Corral moved to dismiss on January 7, 2019. Golden Corral then sued the Scism parties for breach of the Franchise Agreement in the United States District Court for the Eastern District of North Carolina. The two actions were consolidated in the District of New Jersey. The New Jersey District Court partially granted Golden Corral's motion to dismiss on December 3, 2019. The District Court then denied the Scism parties' motion for leave to file a Rule 54(b) motion on June 15, 2022. The District Court granted Golden Corral's motion for summary judgment on March 27, 2024, and awarded Golden Corral damages for lost profits.

II.    DISCUSSION[3]

---

[3]    The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's denial of summary judgment, grant of a motion to dismiss for failure to state a claim, interpretation of state law, and interpretation of a contract de novo. Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012) (summary judgment); Newark Cab Ass'n v. City of

3

The Scism parties raise four issues on appeal. We address each in turn.

A.    Lost Future Royalties

The Scism parties argue that under Section IV.A.1.c of the Franchise Agreement, the initial franchise fee was remitted to compensate for any lost future royalties suffered by Golden Corral and that, accordingly, they owe Golden Corral no lost royalties.[4] They contend that it would not make sense to pay an initial $50,000 franchise fee for "lost future royalties" only to have Golden Corral further recover in the event of contract default and termination. We disagree. The Section's plain language makes clear that the "lost future royalties" referenced are losses associated with the opportunity cost to Golden Corral in franchising with the Scisms rather than with another party. Appx. 068. This interpretation is confirmed when reading the Franchise Agreement as a whole, which sets forth the Scism parties' future royalty obligations in later sections. Appx. 65

---

Newark, 901 F.3d 146, 151 (3d Cir. 2018) (motions to dismiss); Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (interpretation of state law); Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA, 779 F.3d 214, 218 (3d Cir. 2015) (contract interpretation). We review a district court's findings of fact for clear error. In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989).

[4]    Section IV.A.1.c of the Franchise Agreement provides:
"The initial franchise fee (and each portion thereof) described in this Section IV.A.1. shall be deemed fully earned and non-refundable in consideration for, among other things, the administrative and other expenses incurred by Franchisor in furnishing assistance and services to Franchisee and for Franchisor's lost future royalties or deferred opportunity to franchise others." Appx. 068.

The Franchise Agreement also contains a choice of law provision specifying that North Carolina law applies. Appx. 103. However, none of the parties challenge on appeal the District Court's application of New Jersey law. Thus, we will review the District Court's contract interpretation under New Jersey law.

4

(Section II), 68 (Section IV.A.2); <u>Travelers Indem. Co. v. Dammann & Co.</u>, 594 F.3d 238, 255 (3d Cir. 2010). Were we to agree with the Scism parties, they could evade all future royalty payments in exchange for the $50,000 initial fee. This interpretation would obviate the need to specify royalty obligations in later sections and render those sections meaningless, contrary to New Jersey contract law. <u>See</u> <u>MacDonald v. CashCall, Inc</u>, 883 F.3d 220, 228–29 (3d Cir. 2018) ("Under New Jersey law…contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous." (cleaned up)). We conclude that the District Court did not err in rejecting the Scism parties' interpretation of this clause.

B.      The Dismissal of Counts 1-5

The District Court dismissed counts 1-5 of the complaint, finding these claims were released. Appx. 039. The Scism parties argue that, as an assignee of the Franchise Agreement, GCV did not release its own claims against Golden Corral. This argument is forfeited because the Scism parties did not raise it in their district court briefing.[5] <u>See</u> <u>Birdman v. Off. of the Governor</u>, 677 F.3d 167, 173 (3d Cir. 2012).[6] We will thus affirm the District Court's dismissal of counts 1-5.

C.      The Scism Parties' Rule 54(b) Motion

[5]      Similarly forfeited is the Scism parties' argument, raised for the first time in their reply brief, that counts 1-5 were not released because these claims had not accrued at the time the Franchise Agreement was executed. Reply Br. at 3-7; <u>Gambino v. Morris</u>, 134 F.3d 156, 161 n.10 (3d Cir. 1998).

[6]      The Scism parties have presented no exceptional circumstances that would warrant review of this argument, despite its forfeiture.

5

Pursuant to Rule 54(b), the Scism parties requested leave to file a motion for revision of the District Court's order dismissing counts 1-5 of the Third-Party Complaint against Golden Corral. Dist. Ct. Dkt. No. 36, 98. The District Court denied this motion. Dist. Ct. Dkt. No. 105. We will affirm.

When an order "adjudicates fewer than all the claims," Rule 54(b) allows a District Court to revise a judgment at "any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). "A proper motion to alter or amend judgment [per Rule 54(b)] must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reinsurance, Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (cleaned up).

The Scism parties argue that they cited new evidence, warranting revision, that was previously unavailable to them. Opening Br. at 24. We perceive no clear error in the District Court's finding that the evidence was not new. Six months before the District Court partially granted the motion to dismiss, the Scism parties were provided a document that included all of the information alleged to be new. Appx. 46-7. Although the Scism parties did not have deposition testimony reiterating that information until April 12, 2022, the Scism parties possessed the relevant information at the time the motion to dismiss was litigated. Id.

The Scism parties also argued in their Rule 54 motion that revision was warranted to correct the District Court's clear error of law and to prevent manifest injustice in applying the release to GCV. We conclude that the Scism parties failed to meet their

burden in establishing clear error because the release was effective as to GCV and counts 1-5. Under the Assignment Agreement, the Scisms released "any and all claims," such as counts 1-5, "arising out of or related to" the Franchise Agreement prior to the date of Assignment. Appx 110. Because the Scisms relinquished such claims, they could not have assigned them to GCV. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., 247 F.3d 44, 60 (3d Cir. 2001) ("[A]bsent a provision stating otherwise, assignment...will result in the assignee stepping into the shoes of the assignor with regard to the rights that the assignor held and not in an expansion of those rights.").

Based on the foregoing, we will affirm the District Court's denial of the Scism parties' motion for revision.

D.    The Lost-Profits Award

The Scism parties argue that the damages awarded for lost future profits should have been reduced by the value of $320,000—the value of the equipment, fixtures, and furnishings at the franchised location, over which Golden Corral had a lien.[7]

We perceive no clear error in the District Court's finding that Golden Corral did not fail to mitigate losses. The Scism parties contend that Golden Corral transferred the

---

[7]    Golden Corral argues that the Scism parties forfeited this argument because they only raised it in their reply to the motion for summary judgment. However, in their cross motion for summary judgment and opposition to Golden Corral's summary judgment motion, the Scism parties argued that Golden Corral should have mitigated damages by selling the equipment. Dist. Ct. Dkt. No. 130-3, at 17-18. Because it is preserved, we will review for clear error. Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 257 (3d Cir. 2008) ("The District Court's determination that [Appellants] did not adequately mitigate losses and that reasonable efforts would have reduced their damages are findings of fact reviewed for clear error.").

equipment, fixtures, and furnishings to a new restaurant that opened in GCV's prior space. The District Court found, however, that although Golden Corral tried to find a buyer for the equipment, it was unsuccessful in "liquidat[ing] the Restaurant's furnishings, equipment, and fixtures." Appx. 30-31. The Scism parties cite to no evidence that contradicts this finding, nor any evidence that the Scisms do not retain ownership of the equipment. There is no basis to conclude the District Court clearly erred, and we will affirm.

III.    CONCLUSION

For the foregoing reasons, we will affirm.