NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1980
_____

JAMAR BOYKINS,
                                    Appellant

v.

SEPTA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-16-cv-00985)
Magistrate Judge: Marilyn Heffley
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 7, 2017

Before:  JORDAN, HARDIMAN, and SCIRICA, *Circuit Judges*.


(Filed:  January 17, 2018)


_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Jamar Boykins appeals the grant of summary judgment for his employer, the Southeastern Pennsylvania Transportation Authority ("SEPTA"), on his claims of race discrimination and retaliation under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act. We will affirm.

**I.**

Jamar Boykins, who is African American, currently serves as a first-class electrician in the Bridges & Building Department of SEPTA's Railroad Division. Between 2013 and 2015, Boykins applied for a number of promotions to the position of maintenance manager. This case arises out of SEPTA's decision to hire an alternative Caucasian candidate, James Schneider, for Maintenance Manager Position #14-110 and SEPTA's failure to interview Boykins for Maintenance Manager Positions #14-260 and #15-071.

When selecting candidates for vacant positions, SEPTA follows the procedures established in its Employment, Hiring, Promotion and Transfer Procedures Manual. As relevant here, prior to interviews, the manager seeking to have the job filled (the "Hiring Manager") and a member of the Human Resources Department prepare a list of questions for candidates, as well as recommended responses. Interviews are then conducted by a panel of two to five interviewers, who, according to the Manual, "should be diverse." App. 359. Following an interview, interviewers complete an Employment Evaluation

2

Form, ranking applicants based on their qualifications and experience. The candidate with the highest combined rating is offered the position.

Boykins applied for Position #14-110 and, along with eleven other candidates, was interviewed on September 11, 2014, by three Caucasian panel members: Gerald McGovern (the Hiring Manager and, at all times relevant to this appeal, the Assistant Director of the Maintenance Department), Melissa Cooper, and Mark Nichols. Upon completion of the interviews, Boykins ranked seventh of the eleven candidates. James Schneider ranked first and was awarded the position. Thereafter, Boykins filed a complaint of discrimination—first with SEPTA's Equal Employment Opportunity / Affirmative Action ("EEO/AA") Office and later with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission—alleging he was not promoted because of his race. After receiving Boykins's complaint, Lorraine McKenzie, Director of the EEO/AA Office, sent a memorandum to the Director of Maintenance for the Railroad Division (William Dilks) and other senior employees informing them of the allegations.

Boykins continued to apply for various maintenance manager positions after filing his complaint, including Positions #14-260 and #15-071.[1] (Boykins also applied for Position #15-063 and was selected for an interview but declined to attend.) When SEPTA failed to offer him an interview for either position, Boykins amended his discrimination

---

[1] McGovern was the Hiring manager for Position #15-071 and Stephen Kish was the Hiring Manager for Position #14-260.

3

complaint to include a claim of retaliation. Boykins also alleged other incidents of

retaliation including: a confrontation with Andy Gillespie, Chief Engineer of the

Engineering, Maintenance and Construction Department, in which Gillespie allegedly

verbally and physically assaulted Boykins (by touching his cheek) after allegedly falsely

accusing him of being at Queen Lane Station; an incident with McGovern in which

McGovern "got real hostile with [Boykins] as he proceeded to tell [Boykins] to go put

[his] vest on," App. 153; and McGovern's failure to grant Boykins's requests to receive

NORAC training.[2]

## II.[3]

### A.

Title VII and the Pennsylvania Human Relations Act ("PHRA") prohibit an

employer from engaging in race discrimination against an employee. *See* 42 U.S.C.

---

[2] NORAC stands for Northeast Operating Rules Advisory Committee, a committee formed by various railroads to establish common rules for the operation of the railroads.

[3] The Magistrate Judge had jurisdiction under 28 U.S.C. §§ 636(c)(1), 1331, and 1367 and we have jurisdiction under 28 U.S.C. § 1291. Our review of the Magistrate Judge's grant of summary judgement is plenary, *see Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013), and we apply the same standard as the trial judge, reviewing the record and making all reasonable inferences in the non-movant's favor, *see Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). "We will affirm if our review shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). A dispute is genuine "only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). The moving party is entitled to judgment as a matter of law when the non-moving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

§§ 2000e-2, *et seq.*; Pa. Stat. Ann. tit. 43, §§ 951, *et seq.* Title VII racial discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). We have applied this framework to PHRA claims. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999) ("[T]he standards are the same for purposes of determining [a] summary judgment motion."); *see also Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995).

Under *McDonnell Douglas*, a plaintiff can establish a prima facie case of employment discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was either not hired or was fired from that position; and (4) nonmembers of the protected class were treated more favorably. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate "a legitimate, non-discriminatory reason for the adverse employment decision." *Id.* at 319 (citing *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 142 (2000)). If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff, who must demonstrate "*both* that the reason was false, *and* that discrimination was the real reason." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). To avoid summary judgment in the employer's favor, the plaintiff must point to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

To discredit an employer's articulated reason for the adverse employment action, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (emphasis in original) (internal quotation marks and citation omitted) (brackets omitted). The burden on a plaintiff is "difficult," *id.*, but as we have explained, "[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs," *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992).

To show that an invidious discriminatory reason was more likely than not a cause for the employer's action, "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir. 1998). Examples include showing that the employer has previously discriminated against the plaintiff, that the employer has discriminated against members of the plaintiff's protected class or another protected class, or that similarly situated people not within plaintiff's class were treated more favorably. *See id.* at 645.

**B.**

We first consider Boykins's argument that he produced sufficient evidence of pretext to discredit SEPTA's proffered reason for not promoting him to Maintenance Manager Position #14-110: that he was not the most qualified candidate. Boykins contends he can establish pretext through (1) "inconsistencies" in SEPTA's proffered reason for promoting Schneider to Position #14-110, Appellant's Br. at 22; (2) McGovern's "persistent[]" violations of SEPTA's policies and procedures, *id*. at 23; and (3) SEPTA's "past and subsequent" discrimination, *id*. at 28-31. This argument is unsupported and belies the evidentiary record. Accordingly, we will affirm the grant of summary judgment on Boykins's claim of race discrimination.

First, Boykins argues that SEPTA's reference to Position #14-110 as "construction-related" and its statement that he did not have sufficient "construction-related" experience is a "new found reason for awarding Schneider" Position #14-110. *Id.* at 22. This reason, Boykins contends, is inconsistent with the posted job description and SEPTA's January 2015 response to his EEOC complaint—which do not describe the position as construction-related—and, accordingly, is sufficient evidence from which a reasonable factfinder could disbelieve SEPTA's reasons for not promoting him.

Boykins raises these "inconsistencies" for the first time on appeal and, as such, this argument is waived. *See, e.g.*, *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011). Regardless, a review of the record reveals no inconsistencies, and the value SEPTA placed on Schneider's construction experience can hardly be characterized as

7

"new found".[4] Where the employer asserts it hired the "best qualified" candidate, a plaintiff must show "that the defendant's selection process and criteria were filled with such inconsistencies that the employer's claim that it was seeking the 'best qualified' candidate was a sham." *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir. 1997) (Alito, J., dissenting). Boykins cannot make such a showing here, primarily because he can point to no actual inconsistencies.

Boykins next contends McGovern's violations of SEPTA's policies and procedures demonstrate sufficient evidence of pretext to avoid summary judgment. Specifically, Boykins refers to McGovern interviewing applicants who did not meet the minimum qualification requirements; constituting an all-white interview panel for a position with a minority affirmative action goal," Appellant's Br. at 24; and "using his own subjective and prejudicial decision in weighing the responses of the candidates to each question," *id.* We find this argument similarly unpersuasive.

---

[4] As the trial judge noted, "[t]he first of the 10 interview questions asked of all applicants reflected that construction experience would be a major consideration in selecting a candidate for the position." *Boykins v. SEPTA*, No. CV 16-985, 2017 WL 1355036, at *4 (E.D. Pa. Apr. 13, 2017). Furthermore, contrary to Boykins's assertion that the job posting does not "mention 'construction,'" Appellant's Br. at 22, the posting describes primary responsibilities as "[a]ssist[] engineering in various design changes in an effort to improve infrastructure," App. 237, and "[s]upervise force account *construction projects*," *id.* (emphasis added). In addition, SEPTA's response to Boykins's EEOC complaint explains how Schneider's construction experience will be useful to Position #14-110, particularly because Schneider formerly operated his own construction business. The response states "Mr. Schneider was the owner and operator of his own construction business . . . [where] he was responsible for not only the day-to-day construction and design functions but also a wide array of other duties including supervising employees and contractors as well as managing billing and payroll." App. 782.

As an initial matter, there is an inherent difficulty in attributing discriminatory intent to SEPTA based on the failure of one member of a three-member interview panel to follow SEPTA's policies and procedures. While McGovern was the Hiring Manager for the position, as described above, SEPTA's hiring procedures require each interviewer to complete an Employment Evaluation Form, ranking all applicants interviewed. At the conclusion of the interviews, individual panel members' rankings are combined by the Hiring Manager and the candidate with the highest *combined rating* is offered the position. Boykins has not alleged that the two other panel members were motivated by discriminatory animus. And, even if McGovern had ranked Boykins first instead of fifth, Boykins would not have been awarded the position.[5]

Furthermore, "[w]e have applied the principles explained in *Fuentes* to require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). SEPTA's asserted legitimate non-discriminatory reason is that Schneider was the most qualified candidate for the position. Boykins does not explain how McGovern's decision to interview the majority of people from the Building & Bridges Department who applied for Position #14-110 or assemble an "all-white interview panel" contradicts or casts doubt on this reason.

---

[5] The individual Employment Evaluation Forms show McGovern ranked Boykins fifth overall, Cooper ranked Boykins tenth overall, and Nichols ranked Boykins seventh overall. Based on the rankings of the eleven other individuals interviewed, if McGovern had ranked Boykins first and other candidates' scores were adjusted accordingly, five candidates would still have had higher combined ratings.

Regarding McGovern's decision to interview unqualified applicants, we agree with the trial judge's reasoning. "Given that Boykins was offered an interview and that . . . the applicant chosen was qualified and was rated the highest by all three panel members, the fact that McGovern chose to grant interviews to additional candidates who were not qualified does not logically create any inference of discriminatory motive." *Boykins*, 2017 WL 1355036, at *5 (internal citation omitted).

We also agree with the trial judge's finding that SEPTA's policies do not articulate a definitive requirement for a diverse interview panel.[6] But even if SEPTA's policies and procedures did create such a requirement, the mere fact that McGovern did not follow this requirement, without more, is not sufficient evidence to allow a reasonable factfinder to find pretext. "Although the race and/or gender of the individual(s) responsible for a hiring decision is certainly relevant, it is insufficient to establish a prima facie case of discrimination without more." *Iadimarco v. Runyon*, 190

_____

[6] Boykins argues the trial judge looked at the evidence in the light most favorable to SEPTA, the moving party, in making this determination. While the trial judge must "credit all reasonable inferences in favor of the plaintiff," Appellant's Br. at 27, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In support of a definitive requirement for a diverse panel (where the position has an affirmative action goal), Boykins points to language in SEPTA's policies stating "[t]he Hiring Manager in conjunction with the Human Resources Recruiter must select appropriate Panel Members. Panel Members should be diverse," App. 359, and argues neither O'Neal's, nor any other SEPTA official's affidavits, claim SEPTA does not have such a definitive requirement. We find the language Boykins highlights suggests an aspirational goal and not a definitive requirement. More importantly, it is not enough for Boykins to merely rely on affidavits which fail to disclaim such a requirement exists to create a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

10

F.3d 151, 156 (3d Cir. 1999). Boykins points to nothing more evidencing discrimination in the record.

Lastly, Boykins contends a reasonable factfinder could discredit the scores awarded to Schneider because McGovern used his own "subjective and prejudicial decision in weighing the responses of the candidates to each question." Appellant's Br. at 24. If true, this argument could undermine SEPTA's assertion that Schneider was the most qualified candidate. But Boykins can point to no evidence in the record suggesting McGovern's scoring was influenced by prejudice and "belief alone is insufficient to raise an issue of material fact." *Bray*, 110 F.3d at 996.[7] If anything, the record contradicts the discriminatory motives Boykins attributes to McGovern. Of the panel members, McGovern gave Boykins the highest ranking he received. McGovern was also the Hiring Manager for Position #15-071 (which Boykins also applied for) and, in that instance, SEPTA selected an African American for the promotion.

Boykins's final argument that he produced sufficient evidence of pretext is based on allegations of SEPTA's past discriminatory conduct. Boykins alleges that no African Americans have been hired as maintenance managers in twenty years in the Building & Bridges Department and emphasizes all maintenance managers in his department prior to January 1, 2015, were Caucasian. This, Boykins argues, "is circumstantial evidence from

---

[7] As noted by the trial judge, Boykins also fails to "explain how an interviewer could assign a numeric score to a candidate's response based on the suggested answer without applying some subjective judgment." *Boykins*, 2017 WL 1355036, at *6.

11

which a reasonable jury could consider in determining the motive, intent, and culture in this department at SEPTA." Appellant's Br. at 31.

"Statistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext." *Ezold*, 983 F.2d at 542. But first, a plaintiff must demonstrate the statistical significance of the data. *See Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1112 n.4 (3d Cir. 1997); *see also Berger v. Iron Workers Reinforced Rodmen*, 843 F.2d 1395, 1420 (D.C. Cir. 1988) ("It is well established that if a statistical model does not take into account the legitimate, objective qualifications for the jobs being analyzed, then it fails sufficiently to focus on an appropriate labor pool.").

Here, Boykins does not provide a basis for his statement that no African Americans have been hired as maintenance managers in twenty years in the Building & Bridges Department. Furthermore, while the record supports Boykins's contention that the four maintenance managers reporting to McGovern were Caucasian, the trial judge explained that "the race of prior persons promoted is meaningless without evidence regarding whether African-American applicants were denied the promotion or the relative qualifications of the applicants." *Boykins*, 2017 WL 1355036, at \*5. There is nothing in the record which could allow a reasonable factfinder to draw an inference of discrimination from the bare assertion Boykins presents. Moreover, Boykins asks us to look at the "totality of the circumstances" and SEPTA's corporate culture, Appellant's Br. at 29, but as the trial judge emphasized, "the evidence is unchallenged that as of January 2015, the overall distribution of minorities among management throughout SEPTA was 41%," *Boykins*, 2017 WL 1355036, at \*5 n. 3.

12

Because Boykins has failed to adduce sufficient evidence to allow a reasonable factfinder to find pretext, we will affirm the grant of summary judgment on Boykins's discrimination claim for SEPTA's failure to award him Position #14-110.[8]

**IV.**

**A.**

---

[8] Boykins also raises a racial discrimination claim for SEPTA's decision not to interview him for Maintenance Manager Position #14-260. Boykins raises this as an independent claim for the first time on appeal. (Previously, Boykins has characterized SEPTA's decision not to interview him for this position as evidence of pretext—to rebut SEPTA's proffered reason for not promoting him to Position #14-110—and retaliation.) Generally, "arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review . . . absent exceptional circumstances." *United States v. Rose*, 538 F.3d 175, 179 (3d Cir. 2008) (internal quotation marks and citation omitted).

Even if we were to consider this argument, however, "courts have regularly held that the plaintiff cannot make out a prima facie case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). We have explained that a plaintiff must establish "some causal nexus" between his membership in a protected class and the adverse employment action, *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003), and we will not "presume that an employer most likely practiced unlawful discrimination when it did not know that the plaintiff even belonged to the protected class," *Geraci*, 82 F.3d at 581.

Boykins contends he was qualified for Position #14-260, which rebuts SEPTA's asserted non-discriminatory reason that he was denied an interview because he lacked relevant experience. But, Boykins fails to refute SEPTA's argument that the individuals participating in the interview selection process, Cabiness, O'Neal, and Kish, did not know his race when denying him an interview. Cabiness stated in her deposition she did not know Boykins's race, and O'Neal and Kish stated this in affidavits. In his Opposition to SEPTA's Motion for Summary Judgment before the trial court, Boykins argued that Kish's statement is false because Kish interviewed him on June 5, 2014, for a previous maintenance manager position and therefore knew his race. Boykins does not raise this argument on appeal. Thus, Boykins failed to establish a prima facie case of discrimination for SEPTA's decision not to interview him for Maintenance Manager Position #14-260.

13

Title VII and the PHRA also protect employees who attempt to exercise the rights guaranteed by their respective provisions against retaliation by employers. *See* 42 U.S.C. § 2000e–3(a); 43 Pa. Stat. § 955(d). In the absence of direct evidence of retaliation, we consider retaliation claims for both statutes under the *McDonnell Douglas* framework. *See, e.g.*, *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).

Under *McDonnell Douglas*, to establish a prima facie case of retaliation a plaintiff must show: (1) he or she engaged in an activity protected by Title VII; (2) the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). As before, once a plaintiff establishes a prima facie case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Marra*, 497 F.3d at 300).

Protected activities include making formal charges of discrimination against an employer. *See id*. Furthermore, "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (quoting *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir. 1993)).

14

To qualify as an adverse employment action, an employer's retaliatory conduct must be such that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The plaintiff must also demonstrate that the protected activity "was a but-for cause of the alleged adverse action by the employer," *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013), to establish the third element of the prima face case.

**B.**

Boykins alleges he was subjected to the following retaliatory acts following his complaints of discrimination: he was denied interviews for Maintenance Manager Positions #14-260 and #15-071; in October 2014, SEPTA's Chief Engineer of the Engineering, Maintenance and Construction Department, Andy Gillespie, yelled at him and pointed his finger in his face; McGovern's "harassment in May 2015"; and McGovern's failure to grant Boykins's requests to receive NORAC training. Because we find Boykins cannot establish a prima facie case of retaliation on any of these grounds, we will affirm the grant of summary judgment.

We first address Boykins's retaliatory failure to interview claims. A plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 196; *see also Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007). Boykins contends there is sufficient circumstantial evidence to

15

support his claim that the decision makers denying him interviews for positions #14-260 and #15-071 knew of his EEOC complaint.[9] The trial judge correctly rejected this contention.

In support of his claim, Boykins speculates SEPTA could not have provided responses to his EEOC complaint without informing McGovern. He also points to a memo the Director of the EEO/AA, Employee Relations Department sent to the Director of the Maintenance Department (McGovern's supervisor) and separately argues that because the determination of selecting applicants for an interview takes place during a screening meeting between SEPTA's Human Resources Recruiter (a member of SEPTA's EEO/AA Department) and the Hiring Manager, and because there is no transcript of what is discussed at these screening meetings, "the Court cannot take as gospel truth Mr. Kish's and Mr. McGovern's statements that they were not aware of Plaintiff's complaint." Appellant's Br. at 46.

"Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (quoting *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995)). Thus Boykins's

---

[9] Boykins also alleges the trial judge's grant of summary judgment was based on the erroneous proposition that he was required to present direct evidence of their knowledge. This contention is devoid of any support in the record, which in fact demonstrates that the trial judge considered the evidence Boykins submitted (including the memo the Director of the EEO/AA, Employee Relations Department sent to the Director of the Maintenance Department Boykins points to here) but found it too speculative to raise a genuine issue.

16

unsupported inference that his departmental managers were notified in October 2014, contrary to their testimony and merely because their supervisors were notified, is not sufficient to defeat SEPTA's motion for summary judgment.[10]

Furthermore, regarding Kish's and McGovern's statements that they were not aware of his complaint, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). Boykins has not done so here.[11] Accordingly, we find Boykins cannot demonstrate that he would have been

---

[10] This is particularly true given the emphasis placed on "[c]onfidentiality and prohibitions of retaliation[]" in SEPTA's Internal Discrimination Compliant Procedure. App. 882. Additionally, as SEPTA explains in its brief, the drafter of the EEOC response testified that in preparing the response he had spoken to the recruiter, John Broughton, and Broughton's supervisor, Dan DiAndrea. *See* Appellee's Br. at 44.

[11] Boykins alleges that in April 2015, "Mr. Wharton told him that Mr. McGovern said [Boykins was denied training] because [he] had gone to the EEOC to file compliant against SEPTA." Appellant's Br. at 51. While Boykins asserts this in reference to SEPTA's failure to provide him NORAC training, if true, this fact would suggest McGovern had knowledge of Boykins's EEOC compliant when denying him an interview for Position #15-071. But a reasonable factfinder could not consider this statement, supported only by an affidavit filed by Boykins two months after his deposition, to create a genuine issue of material fact as to McGovern's knowledge of Boykins's discrimination complaint.

We may disregard affidavits that contradict the record or materially alter the story told by discovery. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). "When a party does not explain the contradiction between [a] subsequent affidavit and [a] prior deposition, the alleged factual issue in dispute can be perceived as a 'sham,' thereby not creating an impediment to a grant of summary judgment." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). Here, Boykins's contention that Wharton told him he was denied training because of his EEOC complaint contradicts Boykins's earlier deposition testimony and responses to SEPTA's interrogatories, both of which describe the converse: Boykins making this statement to Wharton. For example, Boykins's response

granted an interview but for the fact that he filed his discrimination complaint and affirm the trial judge's decision that Boykins cannot establish a prima facie case of retaliation on this ground.[12]

Turning to Boykins's claim of retaliatory harassment based on his interactions with Gillespie in October 2014 and McGovern in May 2015, we also affirm the trial judge's determination that Boykins cannot establish a prima facie case of retaliation on these grounds. As an initial matter, we have declined to find adverse action where the "alleged retaliatory acts were criticism, false accusations or verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003). Boykins stresses, and SEPTA concedes, that Gillespie was mistaken in his confrontation with Boykins. In addition, even if McGovern had been hostile with Boykins and yelled at him, isolated and verbal reprimands do not constitute adverse action. "An employee's decision to report discriminatory behavior

---

to interrogatory 3 states, "*Plaintiff* said that he believe that their [sic] doing this because of the EEOC Claim he put in. Mr. Warton said he was going to email them again." App. 314 (emphasis added). During his deposition, Boykins stated "And *I said* I know why they're doing this, they're doing this because of my racial discrimination claim that I put in." App. 147 (emphasis added). Boykins's Statement of Disputed Material Facts further states "Mr. Wharton states he did not remember exactly what Mr. McGovern said in response to plaintiff's request to take the NORAC classes." App. 470. While a party may introduce "new evidence [that] may furnish a good faith basis for the inconsistency," *Baer*, 392 F.3d at 626, Boykins has failed to either explain this inconsistency or introduce testimony of Wharton supporting his contention.

[12] Boykins challenges the trial judge's determination that, even if Boykins could establish that McGovern and Kish knew he had filed a discrimination charge, Boykins was not qualified for either position and was therefore unable to establish pretext. In light of our finding that Boykins cannot establish either McGovern's or Kish's knowledge of the complaint, we need not reach this issue.

cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N.*, 548 U.S. at 68.

Moreover, Boykins cannot show that these exchanges would not have occurred but for the fact Boykins filed his EEOC complaint. Again, Boykins emphasizes that Gillespie mistook him for someone else when he allegedly verbally and physically assaulted Boykins. This cuts against Boykins's contention that Gillespie confronted him because of his racial discrimination allegations. Regarding McGovern, as we explained above, Boykins cannot demonstrate that McGovern was aware of his complaint in May 2015 or point to any evidence in the record casting doubt on McGovern's statement that he only became aware of Boykins's discrimination allegations in late 2016.[13]

Boykins also makes a passing, but undeveloped, reference to *Jensen v. Potter*, in which we held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N.*, 548 U.S. at 53. Following the Supreme Court's decision in *Burlington Northern*, a retaliation claim lies where any activity of the employer—including harassment sufficient to create a hostile

---

[13] Boykins also accuses McGovern of "manipulating the promotional process by changing the qualification requirements for a maintenance manager position to preclude [him] from being interviewed." Appellant's Br. at 44-45. This allegation is supported only with hearsay evidence, which can only be considered on summary judgment if the party presenting it explains how it will present the evidence at trial in an admissible form. *See Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). As the trial judge noted, Boykins has not attempted such an explanation. Furthermore, the Cabiness deposition testimony Boykins cites does not support his claim that McGovern changed the job description for this position.

work environment—"well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (internal quotation marks and citation omitted). However, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments." *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009).

Having made no attempt to demonstrate how the conduct he alleges amounts to a hostile work environment, Boykins has waived any retaliation claim premised on this ground. Moreover, this claim would suffer from the same causational defects discussed above.

We finally address Boykins's claim that he was denied NORAC training in retaliation for his EEOC complaint. The denial of training can constitute retaliation where the training "contributes significantly to the employee's professional advancement." *Burlington N.*, 548 U.S. at 69 (theorizing that "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination"). But where a plaintiff cannot show that the training is germane to his regular job functions, we have found no basis for inferring the denial of training was discriminatory. *See, e.g.*, *Shaner v. Synthes*, 204 F.3d 494, 503 (3d Cir. 2000). For example, in *Shaner*, we emphasized in the context of a discrimination claim under the Americans with Disabilities Act ("ADA") that "[t]he company contends that PC applications and Excel were not necessary for Shaner to perform his job. Shaner's testimony fails to counter the company's contention, and indeed tends to support it . . . . [H]e gave no testimony

20

indicating that training in these areas was germane to his regular job functions." *Id.* We thus affirmed the district court's grant of summary judgment against the plaintiff on his ADA claim premised on denial of training. *Id.*

The situation is analogous here. McGovern testified that within the Bridges & Building Department, electricians are not required to have NORAC certification. He also testified that positions in NORAC training sessions are limited and preference is given to employees whose positions required this certification.

Furthermore, we agree with the trial judge that Boykins cannot establish that obtaining NORAC certification would have significantly advanced his career. The record shows only one position he applied for required a NORAC certification—Position #15-071-EMC—and Boykins was not otherwise qualified for that position. Notably, maintenance managers in the Bridges & Buildings Department are not required to have NORAC certifications. Accordingly, we find Boykins cannot adduce sufficient evidence to allow a reasonable factfinder to find pretext and affirm summary judgment on Boykins's retaliation claims.

## IV.

For the foregoing reasons, we will affirm the grant of summary judgment to SEPTA.

21